1   SCHEER LAW GROUP, LLP
    SPENCER P. SCHEER #107750
2   JOSHUA L. SCHEER #242722
    REILLY D. WILKINSON #250086
3   JONATHAN SEIGEL #168224
    155 N. Redwood Drive, Suite 100
4   San Rafael, CA 94903
    Telephone: (415) 491-8900
5   Facsimile: (415) 491-8910
    P.100-203S-A
6

7   Attorneys for
    Defendant PAUL FINANCIAL, LLC

8 

            **UNITED STATES DISTRICT COURT**

9           **EASTERN DISTRICT OF CALIFORNIA**

10

11   PHAL PACHECO,             No.

12          Plaintiff,     [San Joaquin County Superior Court

         vs.           Case No. 39-2009-00228012-CU-MC-

13                    STK]

14   PAUL FINANCIAL, et al.,

15         Defendants.   **DEFENDANT PAUL FINANCIAL**
                        **LLC'S NOTICE OF REMOVAL**

16                         **UNDER 28 U.S.C. §§ 1331 and**
                        **1441(a) &(b)**

17                         [Federal Question]

18

19

20       TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL PARTIES

21   AND THEIR ATTORNEYS OF RECORD:

22       PLEASE TAKE NOTICE that defendant PAUL FINANCIAL, LLC removes the action

    described below from the Superior Court of the State of California for the County of San

23   Joaquin to the United States District Court for the Eastern District of California.

24   **I. BACKGROUND**

25       1.    Plaintiff Phal Pacheco filed an action in the Superior Court of the State of

26   California, County of San Joaquin, entitled <u>Phal Pacheco v. Paul Financial, LLC, et al.</u>, Case No.

27   39-2009-00228012-CU-MC-STK on October 16, 2009 ("State Court Action").

28

                                 1

2.     Thereafter, Defendant was served with a copy of the Summons and Complaint in the State Court Action.  No defendant has taken part in any proceedings and to Paul Financial, LLC's knowledge, no defendant has been served or made an appearance in the State Court Action.

3.     The Complaint asserts twenty causes of action against Defendants, including claims for violation of the Truth in Lending Act, 15 USC section 1638 and the Real Estate Settlement Procedures Act, 12 USC section 2607(b).  Plaintiff also purports to allege state law claims for various common law torts, breach of contract, and violation of state statutes.

## II. BASIS FOR REMOVAL

4.     The above-described State Court Action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. Section 1331, and is one that may be removed to this Court by Defendants pursuant to 28 U.S.C. Section 1441(a),(b).

5.     Section 1441(a) of Title 28 of the United States Code provides for removal of any action in which the United States district courts have original jurisdiction and Section 1441(b) states that district courts have original jurisdiction over any civil action founded on a claim or right arising under the "laws of the United States and shall be removable without regard to citizenship or residence of the parties."

6.     Plaintiff's claims against Defendants are chiefly based on alleged violations of federal laws.

## III. PROCEDURAL COMPLIANCE

7.     This Notice of Removal is timely filed within thirty days of the day on which Defendant was served with the State Court Action.

8.     The State Court Action was pending before the Superior Court for the County of San Joaquin. Because this Court is the United States District Court for the district and division embracing the place where the original action was filed, it is the appropriate Court for removal under 28 U.S.C. Section 1446.

9.     Pursuant to 28 U.S.C. Section 1446(a), attached as Exhibit A are copies of "all process, pleadings, and orders served upon" Defendant. A copy of this notice has been served on

2

1  all parties of record and will be filed with the Clerk of the Superior Court for the County of San

2  Joaquin.

3  **IV. <u>CONCLUSION</u>**

4  Defendant respectfully requests that the above State Court Action be removed from the

5  state court in which it was filed to the United States District Court in and for the Eastern District

6  of California, and request further that this Honorable Court issue all necessary orders and process

7  and grant such other and further relief as in law and justice Defendant may be entitled to receive.

8

9

10 Date:    January 8, 2010                    SCHEER LAW GROUP, LLP

11

12                                By:    <u>s/SPENCER P. SCHEER</u>

13                                       #107750

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

See Attachment "A"

RECEIVED

DEC 14 2009

TOBIN & TOBIN
SAN FRANCISCO

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PHAL PACHECO, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California-San Joaquin | CASE NUMBER: *(Número del Caso):* 39-2009-00228012-CU-MC-STK |
|---|---|

Courthouse, Room 303
222 E. Weber Avenue, Stockton, CA 95202

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Phal Pacheco, 23061 La Casa Court, Tracy, CA 95304, (209) 221-9562

| DATE: October 6, 2009 *(Fecha)* | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* PAUL FINANCIAL, LLC

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☑ other *(specify):* LIMITED LIABILITY COMPANY

4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|



EXHIBIT "A"

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PACHECO v. PAUL FINANCIAL, et.al. | |

**ATTACHMENT** (Number): A

*(This Attachment may be used with any Judicial Council form.)*

PAUL FINANCIAL, LLC, a California Corporation, form unknown; PREMIER CAPITAL MORTGAGE, a California Corporation, form unknown; GMAC MORTGAGE, LLC, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, a Business Entity, form unknown; and DOES 1 through 50, inclusive,

     Defendants.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 (Rev. July 1, 2009)

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com



RECEIVED

DEC 14 2009

TOBIN & TOBIN
SAN FRANCISCO

1  Phal S. Pacheco
   23061 La Casa Court
2  Tracy, CA 95304
   Telephone: (209)221-9562
3
4  In Pro Per
5
6              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
7                    **FOR THE COUNTY OF SAN JOAQUIN**
8                                           39-2009-00228012-CU-MC-STK

                                            Case No.:
9  PHAL PACHECO, an individual,             **COMPLAINT FOR:**
10
           Plaintiff,                       1. DECLARATORY RELIEF;
11     vs.                                   2. INJUNCTIVE RELEIF;
                                            3. DETERMINE NATURE, EXTENT AND
12 PAUL  FINANCIAL,  LLC,  a  California    VALIDITY OF LIEN;
   Corporation,  form  unknown;  PREMIER    4. CONTRACTUAL BREACH OF GOOD
13 CAPITAL  MORTGAGE,  a  California         FAITH FAIR DEALING;
   Corporation,  form  unknown;  GMAC       5. VIOLATIONS OF TILA;
14 MORTGAGE, LLC, a Business Entity, form    6. VIOLATIONS OF RESPA;
   unknown;  MORTGAGE  ELECTRONIC           7. VIOLATION OF CALIFORNIA CIVIL
15 REGISTRATION SYSTEMS, a Business Entity, CODE § 1916.7 b(2)
   form  unknown;  and  DOES  1 through 50, 8. VIOLATION OF CALIFORNIA CIVIL
16 inclusive.                               CODE § 1918-1920,1921
17                                          9. VIOLATION OF CALIFORNIA CIVIL
           Defendants.                      CODE § 1916.7 B
18                                          10. VIOLATION OF CALIFORNIA CIVIL
                                            CODE § 1916.10 (C)
19                                          11. VIOLATION OF CALIFORNIA CIVIL
                                            CODE § 2079.16
20                                          12. VIOLATION OF CODE OF FEDERAL
                                            REGULATIONS § 226.23(3); 226.17
21                                          13. VIOLATION OF CALIFORNIA CIVIL
                                            CODE § 2932.5;
22                                          14. RECISSION;
23                                          15. FRAUD;
                                            16. UNFAIR AND DECEPTIVE ACTS AND
24                                          PRACTICES (UDAP);
25                                          17. BREACH OF FIDUCIARY DUTY;
26
27
28

18. UNJUST ENRICHMENT;
19. UNCONSCIONABILITY;
20. PREDATORY LENDING; CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200

**Jury Trial Demanded**

**Unlimited Jurisdiction**

## INTRODUCTION

COMES NOW the Plaintiff PHAL PACHECO (hereinafter referred to collectively as "Plaintiffs"), alleges as follows:

## PARTIES

1.    At all times relevant herein, Plaintiff was over the age of eighteen and is and were a resident of 23061 La Casa Court, Tracy, CA 95304, County of San Joaquin, California (hereinafter referred to as "Subject Property").

2.    Plaintiff purportedly entered into a loan repayment and security agreement on or about, March 9, 2007 with Defendant PAUL FINANCIAL, LLC, (hereinafter referred to as "PAUL"), which required Plaintiff to repay a loan of $880,000.00 to PAUL. Plaintiff's purchased their home July 20, 2004 for $791,000.00 with 95% financing with a first and second mortgage. The current loan in dispute was a refinance in the amount of $880,000.00 with a cash-out of $55,134.16 at close of escrow. It is an Option Adjustable Rate Mortgage (negative amortization) loan with a starting "teaser rate" interest of 2.500% for the first month with a payment of $2,902.05 per month. Although the payment remains the same for the following eleven months, the interest rate will then adjust monthly to extraordinary heights.

Each month, the interest rate changes on this loan. The monthly payments on this loan only adjust once a year. If the interest rate calculation is higher than the amount of the payment, the

difference between the payment amount and the amount actually due for interest is added to the loan, thus, a "negative amortization". There is a "ceiling" to the amount that may be added to the principal balance, in this case, that "ceiling" is a maximum of $1,012,000.00, or 115% of the original loan amount. The loan was purportedly secured by the Subject Property.

3.     Plaintiff is informed and therefore believes that Defendant PAUL, a California Corporation, form unknown, is a corporation, authorized to do business in the State of California. PAUL is the original mortgage lender and original mortgage servicer with business addresses of: 1401 Los Gamos Drive, San Rafael, CA 94903 and P O Box 7867, Santa Rosa, CA 95407-0867.

4.     Plaintiff is informed and therefore believes that Defendant PREMIER CAPITAL MORTGAGE (hereinafter referred to as "PREMIER"), a California corporation, form unknown, is a corporation, authorized to do business in the State of California. PREMIER is the original mortgage broker with business addresses of: 4101 Dublin Boulevard, Suite F 231, Dublin, CA 94568.

5.     Plaintiffs is informed and therefore believes that Defendant GMAC MORTGAGE, LLC, (hereinafter referred to as "GMAC"), a Business Entity, form unknown, is, authorized to do business in the State of California. Plaintiff is informed and believes that GMAC is the current mortgage servicer of this loan with a business address located in Waterloo, Iowa.

6.     Plaintiff is informed and therefore believes that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (hereinafter referred to as "MERS"), is the current mortgage nominee/beneficiary. MERS additionally has an inactive status, however has a business address of P O Box 2026, Flint, MI 48501-2026.

7.     The Defendants (each of them named in paragraphs 1 through 6 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint

adverse to Plaintiff's title thereto and as DOES I through 50 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiff. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the Subject Property. Plaintiff is informed and therefore believe, and on that basis allege that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

8.    Plaintiff is informed and therefore believes and on that basis alleges that at all times mentioned herein, the Unknown Defendants are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint. Plaintiff is informed and therefore believes and on that basis alleges that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

9.    Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

10.    As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §1601-16666j] and with the Act's corresponding Regulation Z (hereinafter

referred to as "RegZ")[24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; California Business and Professions Code [§ 17200; Federal Trade Commission § 5]; 24 Code of Federal Regulations § 3500.10, §226.23 & §226.17; Unfair and Deceptive Business Practices and Acts [UDAP Statutes]; and California Civil Codes § 1916.7 – multiple sections, § 2079.16 and §1918-21.

## JURISDICTION

11.    The transactions and events which are the subject matter of this Complaint all occurred within the County of San Mateo, State of California.

12.    The Subject Property is located within the County of San Joaquin, State of California.

## FACTUAL ALLEGATIONS

13.    Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

14.    For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.  Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure.  The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics.  All were rampant within

the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

15. The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiffs of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff face the potential of losing their home to the very entity and entities who placed them in this position.

16. On or about March 9, 2007 (hereinafter referred to as "Closing Date") Plaintiff entered into a consumer credit transaction with PAUL by obtaining a $880,000.00 mortgage loan allegedly secured by Plaintiff's principal residence, (Subject Property). This note was allegedly secured by a First Trust Deed on the Property in favor of PAUL.

17. The terms of the finance transaction with PAUL are not clear or conspicuous, nor consistent, and are illegal, and include, for example, a negative amortization of the loan, an amount financed based upon a stated income and a credit report only, flawed underwriting procedures, an understated finance charge and other deceptive rates, fees and terms for which PAUL did not disclose, make clear in an effort to induce Plaintiff's into a loan under unfavorable and illegal terms.

18.    In addition, and unbeknownst to Plaintiffs, PAUL illegally, deceptively and/or otherwise unjustly, qualified Plaintiffs for a loan which PAUL knew or should have know that Plaintiffs could not qualify for or afford by, for example, using the initial, interest-only feature of the

loan as the qualifying factor for its underwriting. Had PAUL used a more accurate and appropriate factor, such as considering the payment of the actual principal and interest for the full term of the loan, Plaintiffs would not have qualified for the loan in the first place. Consequently, PAUL sold Plaintiffs a loan product that it knew or should have known would never be able to be fully paid back by Plaintiffs. PAUL ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiffs a deceptive loan product.

19. There was no determination of the ability of the Plaintiff to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

20. Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

For example, The loan documents present a "picture" of the loan whereby one continuously sees interest rates presented on the loan documents as 7.875%. The payment is continuously represented as $2,902.05, and nowhere is it mentioned what the actual amortizing payment is.

This is an Unfair and Deceptive Practice that leads the borrower to believe that he is only paying an interest rate of 7.875% and the monthly payment of $2,902.05. It is only disclosed in "loan legalese" that most borrowers could never understand.

In Monaco v Bear Sterns, a federal court in CA found that standard Option ARM loan documents are ambiguous, potentially subjecting the lender to liability for trying to enforce the loan's terms. Making matters more difficult for the lender, the court further held that the lender's alleged violation of TILA could create liability under CA Unfair Competition Law, which allows for

greater penalties than allowed TILA.

Monaco sought to rescind their loans by reason of alleged violations of TILA including failure to disclose the actual interest rate and negative amortization.

21.    The purpose of entering into the above-described mortgage loan transactions was for Plaintiffs to eventually own the Property.  That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

22. Each subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under this loan agreement, including PAUL, PREMIER, GMAC, MERS, and UNKNOWN DEFENDANTS (hereinafter referred to collectively as "Defendants") failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within.  As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

23. A expert, certified, forensic audit of the Plaintiff's loan documents revealed the following legal violations which were incurred during the handling and processing of Plaintiff's loan:

24. Plaintiff is informed and believes and therefore alleges that Defendants did not comply with the requirement to provide Plaintiffs with a Mortgage Loan Origination Agreement.

32.  Plaintiff is informed and believes and therefore alleges that PAUL has placed Plaintiff into a loan whereby they increased the margin so as to receive a Yield Spread Premium of which benefits PAUL over the life of the loan in excess of $54,206.52.  PAUL also failed to provide a separate fee agreement regarding Yield Spread Premium, properly disclosing this fact.  As a result PAUL and PREMIER have enjoyed the benefits of Unjust Enrichment.

33. Plaintiff is informed and believe and therefore alleges that the underwriter approved this

loan based only upon a stated income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the Plaintiff should have been declined for this loan.

34. Plaintiff are informed and believe and therefore alleges that that based on a Real Income Analysis, with the type of take home income Plaintiff possesses and that was clearly disclosed to Defendants, that the borrower would not be able to support the home payment over an extended period.

35. Plaintiff is informed and believe and therefore alleges that PAUL was paid unearned fees, which were hidden from Plaintiff in the form of a Yield Spread Premium which increased the interest rate of the Borrower, whereby creating a windfall for PAUL and PREMIER over the life of the loan. This was purported to Plaintiff by explaining that the Yield Spread Premium was a "credit for closing costs".

36. Plaintiff is informed and believe and therefore alleges that Defendants failed to provide Plaintiff with written notice of the furnishing of negative credit information to consumer reporting agency after Defendants furnished such negative credit information about Plaintiff.

37. Plaintiff is informed and believes and therefore alleges that a California Insurance Disclosure as mandated by law was not provided to the Plaintiff prior to the consummation of this loan.

38. Plaintiff is informed and believe and therefore alleges that Defendants breached their fiduciary duty to Plaintiff because they knew or should have known that the Plaintiff will or had a strong likelihood of defaulting on this loan, he/she has a fiduciary duty to the borrower to not place them in that loan (in harms way).

39. Plaintiff is informed and believe and therefore alleges that it was in the best interest

of the Defendants to promote the particular program for which they approved the Plaintiff. It led to a maximization of profits for the Defendants, with no concern for the Plaintiff financial position or livelihood.

40. Plaintiff is informed and believes and therefore alleges that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

41. Plaintiff is informed and believe and therefore alleges that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

42. Plaintiff is informed and believes and therefore alleges that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code § 17200 and the Unfair and Deceptive Acts and Practices statutes.

## FIRST CAUSE OF ACTION

### Declaratory Relief

### (Against All Defendants)

43.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

44.    An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties, in that Plaintiff contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations

3500.10, the California Civil Code, the Federal Trade Commission Act, California Business and Professions Code, UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies. Plaintiffs further contend that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiffs further contend that the Defendants perpetrated a fraudulent loan transaction.

45.     Plaintiff request that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants. Plaintiff further requests that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem the any sale of the Subject Property "unlawful and void".

46.     As a result of the Defendants' actions, Plaintiff has suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

47.     Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against All Defendants)

48.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

49.    Defendants have commenced (or are planning to commence) a foreclosure action under the Note and have scheduled (or will schedule) a non-judicial sale. Said sale will cause Plaintiffs great and irreparable injury in that real property is unique.

50. The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of the property and will lose his home.

51. Plaintiff have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiff to determine the precise amount of damage Plaintiff will suffer.

WHEREFORE, Plaintiff pray for relief as set forth below.

///

### THIRD CAUSE OF ACTION

**Determine Nature, Extend and Validity of Lien under**

**California Commercial Code §9313**

**(Against All Defendants)**

52.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

53.    A written instrument that purports to be a Deed of Trust executed by Plaintiffs is presently in existence and under Defendant's control. The Deed of Trust is voidable in that there is no enforceable underlying promissory note for the deed of trust to secure.

54.    Prior to the commencement of this case, PAUL purportedly received a copy of a promissory note which they intend to foreclose upon. Plaintiff alleges on information and belief that PAUL does not possess the original promissory note nor did defendants ever take actual possession of the original promissory note. Plaintiff has demanded proof of PAUL's perfected interest without response.    Plaintiff believes PAUL may have sold or transferred the said interest in the Subject Property.

55.    Defendants failed to comply with California Commercial Code §9313.

56.    As a result, defendants never perfected their interest in the above referenced deed of trust.

57.    Said unperfected security interest of defendant is void as to Plaintiffs by virtue of 11 U.S.C. §544.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

58.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

59.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts

each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

60. The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

61. Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint. Defendants were required to exercise such power in good faith.

62. Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants:

      I.    Willfully withheld numerous disclosures;

      II.    Willfully withheld notices in regard to Underwriting standards, Yield Spread Premiums, Disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated;

      III.    Willfully placed Plaintiff in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

63. As a result of Defendants' breach of this covenant, Plaintiff has suffered injury and has caused Plaintiff the threat of loss of their home. Plaintiff has incurred and continues to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

64. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and

oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION

### Violation of TILA, 15 U.S.C. § 1601, et.seq.

### (Against All Defendants)

65.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

66.    Defendants violated TILA by failing to provide Plaintiff with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

67. Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

68. The Final Truth in Lending statement, dated March 5, 2007 was recalculated using the actual figures, which were an Annual Percentage Rate of 7.976%, an amount financed figure of $874,035.27, a finance charge of $2,351,363.35, and a total payments number of $3,225,398.62.

The use of the prior figures by PAUL and PREMIER were inaccurate and not calculated properly. The result was inaccurate disclosures of charges, payments and overall lending figures to the Plaintiffs. The actual calculations reveal that the Finance Charge was under stated by $888.58.

The failure of the lender to provide and accurate Truth In Lending Disclosure whereby the Finance Charge is understated or overstated by the indicated amounts below results in an Extended Right to Rescind the loan per Code of Federal Regulation § 226.18(d) and TILA. This type of deception is also illegal under the California Unfair Competition Law, CA Business & Professions Code 17200 and UDAP statutes. This is emblematic of the deceptive tactics undertaken in this loan program.

69. An actual controversy now exists between Plaintiff, who contend they have the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

70. As a direct and proximate result of Defendants' violations Plaintiff have incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

71. Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

72. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Violation of RESPA, 1 U.S.C. § 2601 et.seq.

**(Against All Defendants)**

73.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74.   The loan to Plaintiff was a federally-regulated mortgage loan as defined in RESPA.

75.   Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

(1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

(2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

76.   Here, PAUL and PREMIER were paid unearned fees, which were hidden from Plaintiff in the form of a Yield Spread Premium which increased the interest rate of the Plaintiffs, whereby a windfall for PAUL and PREMIER was created, the extent resulting in PAUL receiving a windfall of "buy back fees" over the life of the loan.   Further, PREMIER has failed Part 2, the test for reasonableness of fees. The Yield Spread Premium is an Unearned Fee under the law. The normal interest rate on an Option ARM mortgage is determined by adding a "Margin" to the "Index" rate and these combined will result in the interest rate that the borrower will pay. To earn a Yield Spread Premium, the broker will increase the amount of the margin that the borrower will pay, which increases the interest rate and the monthly payment. The increase in the monthly payment multiplied

over three years will be the Yield Spread Premium. It takes the borrower three years to repay the Yield Spread Premium. Once the three-year repayment period has ended, the margin on the interest rate does not drop. Instead, the borrower continues to pay at the same interest rate and the lender reaps the benefits of the higher payment.

77.    This was purported to Plaintiff by explaining that the Yield Spread Premium was a "credit for closing costs" or other sort of bait and switch tactic. The Yield Spread Premium significantly affects the borrower's payment and financial situation. Both PAUL and PREMIER have enjoyed the benefits of Unjust Enrichment.

78. No separate fee agreements, regarding Yield Spread Premium that the broker and the lender have enjoyed were ever provided, resulting in the benefits of Unjust Enrichment for PAUL and PREMIER.

79. Defendants violated RESPA because the payments to the mortgage broker and to the lender were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self serving.

80. As a proximate result of Defendants' actions, Plaintiff have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein.

## SEVENTH CAUSE OF ACTION

### Violation of California Civil Code § 1916.7b(2)

### (Against All Defendants)

81. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. Changes in interest and monthly payment shall not occur more often than twice during any annual period and at least six months shall elapse between any two changes. The rate of interest and monthly payments shall not change during the first semiannual period. The amount of any increase in monthly payment shall not exceed 7.5 percent annually.

83. Option ARM mortgages are tied to indexes that can change monthly. As the index changes, so does the interest rate. Therefore, by the fact that the interest rate can change monthly, the Option ARM Mortgage is in violation of the above statute.

84. Here, the Adjustable Rate Mortgage Note disclosed that the payments adjust monthly and not semiannually as mandated by this subsection and therefore is in violation.

85. As a proximate result of Defendants' actions, Plaintiff have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth below.

## EIGHTH CAUSE OF ACTION

### Violation of California Civil Code § 1918.5-1921.1920

### (Against All Defendants)

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

87. According to California Civil Code § 1918.5-1921.1920(a) any mortgage instrument that is made pursuant to the provisions of this chapter shall meet the following requirements: Standards for the adjustment of interest rates or monthly payments shall consider factors, which can reasonably be deemed to affect the ability of borrowers to meet their mortgage obligations.

88.     This loan was based only upon a credit score, stated income (without verification) and a belief that the property would continue to increase in value. No consideration of the ability of Plaintiffs to repay this loan with a realistic means test has been made.

89.     Additional documentation was available in the form of W-2's, income information, tax records, etc. to determine the ability of the borrower to repay the loan. The failure to do so by Defendants violates California Civil Code § 1918.5-1921.1920.

90.     As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff pray for relief as set forth below.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code § 1916.7 B

### (Against All Defendants)

91. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92.  Violation of California Civil Code § 1916.7 B states that: "the difference added to the principal of the loan as of the due date of the installment and thereafter shall bear interest as part of the principal. In no instance shall the difference which is added to the principal be an amount which causes the resulting loan-to-value ratio to exceed the loan-to-value ratio at the time of loan origination".

93.  The current loan is a negative amortizing loan and subject to the loan to value being greater that the original loan to value. As each minimum payment is made, the balance increases, increasing the loan to value ratio, thus violation thus violating the above-statute.

94.  As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein.

## TENTH CAUSE OF ACTION

### Violation of California Civil Code § 1916.7 10(C)

### (Against All Defendants)

95. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96. An applicant for a loan originated pursuant to the provisions of this section must be given, at the time he or she requests an application, a disclosure notice in the following form:

"NOTICE TO BORROWER IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE RATE LOAN. PLEASE READ CAREFULLY"...

97. The intent of the State Legislature in approving this statute was to fully inform home buyers of the pros and cons of adjustable rate mortgages and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

98. Here, none of the Defendants provided to the borrower at any time during the processing of this loan. The result was a lack of informed knowledge of what Plaintiff was entering, and a mental state lacking intent.

99. As a proximate result of Defendants' actions, Plaintiff has been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff pray for judgment against Defendants, and each of them, as set forth herein.

///

## ELEVENTH CAUSE OF ACTION

### Violation of California Civil Code § 2079.16

### (Against All Defendants)

100.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

101.  The integrity and the duty owed to Plaintiff regarding the relationship between the broker and the lender has been compromised.  PAUL will pay a Yield Spread Premium to PREMIER as an inducement to bring them business. Lender has "buy back" provisions in the broker agreements whereby for fraud or default, the broker may be required to "buy back" the loan. Due to this fact and the existence of the lender/broker agreements, it is clear that the lender has some significant measure of control over the broker.

102.  In the matter of Wyatt v Union Mortgage, CA State Supreme Court, 1979; and Montoya v. McLeod (1985) 176 Cal.App.3d 57, 64, 221 Cal.Rptr. 353, the court held that a broker was the lenders' agent even though he had no written agency agreement with the lenders and was paid by a third party, because the broker negotiated the lenders' loan and executed a promissory note in their favor.

103.  Factors the Montoya court considered in determining agent status included: (1) the principal's right to control the agent's activities; (2) the agent's right to exercise discretion in dealings with third parties on the principal's behalf; (3) whether the principal pays compensation to the agent; and (4) the principal's intent to retain the agent and the agent's intent to represent the principal. The mortgage broker had failed to disclose his Dual Agency Relationship as required by both CA statutes and RESPA. Additionally, the lender now assumes a secondary liability for the actions of the broker under agency relationships.  Here, the relationship between PAUL and the other Defendant's most

notably PREMIER are agents to PAUL and subject to liability. Further, the lack of disclosure of the status and financial interest of each of the Defendants to Plaintiff is in violation of the California Civil Code and RESPA.

104.    PAUL and PREMIER knew that a "bait and switch" adjustable rate predatory mortgage with an increase in interest rate due to the YSP paid to PREMIER was not in the best interests of the Plaintiff.

105.    As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein.

## TWELFTH CAUSE OF ACTION

### Violation of Code of Federal Regulations § 226.23 (3) & 226.17

### (Against All Defendants)

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    Pursuant to CFR § 226.23 (3), Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule.

108.    Here, Plaintiff has not received numerous TIL initial disclosures, a mandated Mortgage Loan Origination Agreement, California Insurance Disclosure, and Separate Agreements to demonstrate Yield Spread Premiums. Further, Plaintiff was the victim of additional finance charges and deceptive manipulation in regard to baiting him into this type of loan program.

109.    Therefore, the borrowers have an extended 3-year right to cancel this loan in accordance with § 226.23 (3).

110.    Further, per CFR § 226.17, in a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership is or will be subject to the security interest has the right to rescind the transaction. Lenders are required to deliver two copies of the notice of the right to rescind and one copy of the disclosure statement to each consumer entitled to rescind." The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose: (i) The retention or acquisition of a security interest in the consumer's principal dwelling; (ii) The consumer's right to rescind the transaction; (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business; (iv) The effects of rescission, as described in paragraph (d) of this section; (v) The date the rescission period expires.

Here, there was no transaction date or midnight expiration date when the rescission period ends. This results in an Extended Right to Rescind the loan for up to three years.

The statute also mandates that there should be two properly completed copies of the Notice of Right to Cancel for each person on title. Again, here there was only one (1) copy of this document provided to the Plaintiffs, and not four (two for each title holder) as mandated by the statute. This too, results in an Extended Right to Rescind the loan for up to three years.

Finally, per the above statute, there should be one copy of the Truth In Lending Disclosure for each title holder. Here, only one copy of this disclosure and not two (one for each borrower on title) was provided. This results in an Extended Right to Rescind the loan for up to three years.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein.

## THIRTEENTH CAUSE OF ACTION

### Violation of California Civil Code § 2932.5

### (Against All Defendants)

111.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.   Where a power to sell real property is given to a mortgagee, or other entity whom has placed an encumbrance on title, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

113.   Mortgage Electronic Registration System (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record. This would allow MERS to foreclose on the property, and at the same time, assist PAUL in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved PAUL money in manpower and the costs of recording these notes. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

114.   MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

115.   Since neither MERS nor the servicer have a beneficial interest in the note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the

Assignment in the name of MERS, the Assignment executed by the MERS employee is illegal. The actual owner of the note has not executed the Assignment to the new party. An assignment of a mortgage in the absences of the assignment and physical delivery of the note will result in a nullity.

116.    It must also be noted that the lender or other holder of the note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the Note.

117.    The existence of MERS indicated numerous violations of the California Business and Professions Code as well as Unfair and Deceptive Acts and Practices due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices were intentionally designed to mislead the borrower and benefit the lenders.

118.    One can only conclude after a reading of this section, that MERS has no legal standing to foreclose.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein.

## FORUTEENTH CAUSE OF ACTION

### Rescission

### (Against All Defendants)

119.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

120.    Plaintiff are entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; and 4) Public Policy Grounds, each of which provides independent grounds for relief.

121.    The Truth in Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. Here, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial TIL disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan she could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

122.    The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

122.    As a proximate result of Defendants' actions, Plaintiff have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

## FIFTEENTH CAUSE OF ACTION

### Fraud

### (Against All Defendants)

123.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

124.    Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiff and inducing her to part with their personal and real property buy using a stated income loan.

125. The credit application and or available W-2's provided by Plaintiff was enough, in addition to the application itself for Defendant's to know what type of loan should be offered, and

what the Plaintiff could not afford. Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

126. Defendants engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

127.    The Adjustable Rate Mortgage loan was an inter-temporal transaction on which Plaintiffs had only qualified at the initial teaser fixed rate, and could not qualify for the loan once the interest rate terms changed in two years.

128.    Plaintiff justifiably relied on Defendant's deception, which was the actual and proximate cause of Plaintiff's damages.

129.    Plaintiff is entitled to exemplary and punitive damages for Defendants' fraudulent conduct in the sum to be determined at trial. Further, fraudulent concealment avoids the contract.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTEENTH CAUSE OF ACTION

### Unfair And Deceptive Business Act Practices (UDAP)

### (Against All Defendants)

130.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

131.    Defendants failed to undergo a diligent underwriting process for this loan a alleged in this complaint. They also failed to properly adjust and disclose facts and a circumstance relating to Plaintiff's Adjustable Rate Mortgage and placed Plaintiff in a loan, by way of stated income and misleading facts, which they should never have been approved for because he could not afford it.

Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them.

132.    This loan was marketed in a way that fails to fully disclose all material terms, and includes any terms or provisions which are unfair, fraudulent or unconscionable. This loan is also marketed in whole, or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact.

133.    By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendant has violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of her home, equity, as well as her past and future investment.

134.    By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiff pray for relief as set forth below.

**SEVENTEENTH CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**(Against Defendants)**

135.    Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

136.    Defendants owed a fiduciary duty to Plaintiff and breached that duty by ailing to advise or notify Plaintiff when Defendant's broker knew or should have known that Plaintiff will or has a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harms way).

137.    Regarding this loan, it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiff. It led to a maximization of profits for the Defendants, with no concern for the borrower. A 30-year fixed would have netted less return for the lender, though better for the borrower.

138. Defendant failed to provide material disclosures regarding the loan and its interest rate to Plaintiffs while in the capacity of Plaintiff's Lender.

139.    Defendants failed to fully comply with TILA/RESPA regulations and laws designated to protect Plaintiffs. The failure to do so placed Plaintiff in a serious disadvantage and potential loss of their home.  Such actions are violations of a fiduciary responsibility owed to Plaintiff by Defendants.

WHEREFORE, Plaintiff prays for relief as set forth below.

## EIGHTEENTH CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants)

140.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

141.    Defendants provided the Plaintiff with an agreement to repay a loan that had an adjustable interest rate and called for compensation to Defendants for the life of the loan, which was worth value to Defendants.

142.    Plaintiff likewise expected in return, fair and truthful dealings, disclosures and practices by Defendants while providing value to Defendants.

143.    Defendant acknowledged, accepted, and benefited from the Plaintiff's agreement to enter into the loan.

144.    A forced sale of the Plaintiff's home, and an allowance for Defendant's to recoup the extreme profits enjoyed by forcing Plaintiffs into an imbalance of principal to interest ratio, would be inequitable and unconscionable, while the Defendants enjoy the benefit of the Plaintiff's actions without paying for their own breaches of the law and professional responsibilities.

WHEREFORE, Plaintiff prays for restitution and relief as set forth below.

## NINETEENTH CAUSE OF ACTION

### Unconscionability – UCC-2-3202

### (Against All Defendants)

145.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

146.    If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

147.    A court has the power to refuse to enforce a contract or a clause in a contract that is unconscionable when made per California Civil Code § 1670.5(a) and § 1770(s).

148.    When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

149.    Here, based on the deception, unfair bargaining position, lack of adherence to the

regulations, civil codes and federal standards that the Defendants were require to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff's, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiff pray for restitution and relief as set forth below.

## TWENTIETH CAUSE OF ACTION

### Predatory Lending; California Business and Professions Code §17200

### (Against All Defendants)

148.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

149.    The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices under California Business and Professions Code § 17200.

150.    Acts undertaken by the Defendants here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

151.    The terms "abusive lending" or "predatory lending" are most frequently defined by reference to a variety of lending practices. A fundamental characteristic of predatory lending is the aggressive marketing of credit to prospective borrowers who simply cannot afford the credit on the terms being offered.

152.    Typically, such credit is underwritten predominantly on the basis of the liquidation value of the collateral, without regard to the borrower's ability to service and repay the loan

according to its terms absent resorting to that collateral. When a loan has been made based on the foreclosure value of the collateral, rather than on a determination that the borrower has the capacity to make the scheduled payments under the terms of the loan, based on the borrower's current and expected income, current obligations, employment status, and other relevant financial resources, the lender is effectively counting on its ability to seize the borrower's equity in the collateral to satisfy the obligation and to recover the typically high fees associated with such credit.

153.    While such disregard of basic principles of loan underwriting lies at the heart of predatory lending, a variety of other practices may also accompany the marketing of such credit.

154.    The Defendants never sufficiently examined the Plaintiff's ability to repay the loan primarily because they based their decision on the Plaintiff's Stated Income.

155.    Also, this loan is based on a loan application that is inappropriate for the borrower. For instance, the use of a stated-income loan application from an employed individual who has or can obtain pay stubs W-2 forms and tax returns.

156.    Defendants performed with a lack of due diligence when underwriting this loan. No realistic means test for determining the ability to repay the loan. Further, there was a lack of documentation of income, assets or job verification.

157.    This loan included extraordinarily high debt rations. This is the practice of approving loans with high debt ratios, usually 50% or more, without determining the true ability of the borrower to repay the loan. This is the case of Defendants using Automated Underwriting System.

158.    This loan contained a manner of Equity Stripping. Equity has been removed from this home through repeated refinances, consolidation of short term debt into long term debt, negative amortization or interest only loans whereby payments are not reducing principle, high fees and interest rates. Eventually, borrower cannot refinance due to lack of equity.

159.    This loan contained excessive fees and rates. This loan required Plaintiff to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

160.    This loan was marketed in a way that fails to fully disclose all material terms and in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact.

161.    This loan was emblematic of "Bait and Switch" tactics, whereby the lender and broker would offer a loan at one rate, and then changing the loan program at the last moment.

162.    The lender made fraudulent promised of the advantages of shifting unsecured debt into the mortgage by soliciting Plaintiff with the "benefits" of consolidating bills into a mortgage loan. The lender failed to inform the Plaintiffs that consolidating unsecured debt such as credit cards and medical bills into a mortgage loan secured by the home is a bad idea. If a person defaults on an unsecured debt, they do not lose their home. If a homeowner rolls their unsecured debt into their mortgage loan and default on their mortgage payments, they can lose their home. Furthermore, since unsecured debt generally is paid off between three and five years, shifting unsecured debt into a mortgage loan extends the payoff period to 15 to 30 years. Paying off unsecured debt with a mortgage loan also necessarily increases closing costs because they are often calculated on a percentage basis, thereby increasing the loan balance. Whereas the old total monthly household debt payments may in some cases be less than the monthly payments on the new mortgage loan, the monthly mortgage payments are often more than the previous mortgage payments, thus exacerbating the risk that the homeowner will lose the home to foreclosure.

163.    Defendants are liable to Plaintiff for utilizing predatory practices to induce them into a loan and repayment arrangement that was unrealistic and was going to cause the Plaintiffs financial disaster and loss of their home.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff will ask for the following for each Cause of Action sustained:

1.   For Compensatory Damages in an amount to be determined by proof at trial.

2.   For Special Damages in an amount to be determined by proof at trial.

3.   For General Damages in an amount to be determined by proof at trial.

4.   For Treble Damages in an amount to be determined by proof at trial.

5.   For Punitive Damages as against the individual Defendants.

6.   For Attorney's Fees and Costs of this action.

7.   For Declaratory Relief, including a declaration that Plaintiffs is the prevailing party.

8.   For Injunctive Relief;

9.   For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. For any prejudgment or other interest according to law.

11. Any other and further relief that the Court considers just and proper.

October _9_, 2009

_____
Phil Pacheco
Plaintiff In Pro Per